IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| **EDWARD HUGLER, United States Secretary of Labor,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | Civil Action No. 6:15-cv-28 |
| **BAT MASONRY COMPANY, INC.,** *et al.*, | ) ) | By: Robert S. Ballou United States Magistrate Judge |
| **Defendants.** | ) | |

## **MEMORANDUM OPINION**

In this ERISA action, the Department of Labor ("DOL") seeks to hold defendants liable for their purported breaches of fiduciary duties under a failed ESOP. Defendants Gregory Booth, M.H. Masonry, Inc., and Melvin Hinton ("Defendants") filed a motion to compel the DOL to produce documents that were withheld from discovery on the basis of privilege. Dkt. No. 117. The DOL objects on the grounds that the documents sought are protected from disclosure by the attorney client privilege, the deliberative process privilege, the law enforcement privilege, and the attorney work product doctrine. Dkt. No. 120. I reviewed the subject documents *in camera* and heard oral argument. The motion to compel is **GRANTED in part** and **DENIED in part**.

**I.**

The facts of this matter have been set out in prior court opinions, and I will not recite them in detail here. The core issue underlying this motion is Defendants' statute of limitations defense, claiming that the DOL had actual knowledge of the alleged ERISA violations more than three years before it filed suit on August 28, 2015.

The applicable limitations period in this action is three years "after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113. The Fourth

Circuit has not provided a precise definition of "actual knowledge" in the context of a suit brought under ERISA. See Browning v. Tiger's Eye Benefits Consulting, 313 Fed. Appx. 656, 660–61 (4th Cir. 2009). The Browning court acknowledged that other circuits have come to differing conclusions regarding what constitutes "actual knowledge," such as the Third and Fifth Circuits' requirement of "a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA." See Int'l Union v. Murata Erie N. Am., Inc., 980 F.2d 889, 900 (3d Cir. 1992); Maher v. Strachan Shipping Co., 68 F.3d 951, 954 (5th Cir. 1995). Conversely, the Sixth, Seventh, and Ninth Circuits have determined that actual knowledge occurs when a plaintiff has knowledge of the facts or transaction that constituted the alleged violation, and "it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA." Wright v. Heyne, 349 F.3d 321, 330 (6th Cir. 2003); see also Martin v. Consultants & Adm'rs, Inc., 966 F.2d 1078, 1086 (7th Cir. 1992); Meagher v. Int'l Assoc. of Machinists and Aerospace Workers Pension Plan, 856 F.2d 1418, 1423 (9th Cir. 1988). Meanwhile, the Second Circuit has held that a plaintiff has actual knowledge "when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." Caputo v. Pfizer, Inc., 267 F.3d 181, 193 (2d Cir. 2001).

In Browning, the Fourth Circuit declined to define the phrase, but did note that actual knowledge "depends largely on the 'complexity of the underlying factual transaction, the complexity of the legal claim[,] and the egregiousness of the alleged violation.'" Browning, 313 Fed. Appx. at 661 (quoting Martin, 966 F.2d at 1086). The Court also found that "there cannot be actual knowledge of a violation for purposes of the limitation period unless a plaintiff knows the 'essential facts of the transaction or conduct constituting the violation.'" Id. (quoting Edes v.

Verizon Commc'ns, Inc., 417 F.3d 133, 142 (1st Cir. 2005)).

Thus, Defendants' assertion that DOL had actual knowledge of the ERISA violations more than three years before filing this suit will be a strongly contested, factually-based issue in this litigation. Defendants argue that documents withheld from production by the DOL on the basis of privilege are relevant to their statute of limitations defense and do not properly qualify as privileged, or that any applicable privilege is outweighed by Defendants' substantial need for the documents. The DOL asserts that all of the documents sought are properly protected from disclosure by either the attorney-client privilege, the deliberative process privilege, the law enforcement privilege, or the work product doctrine. I first discuss the standard for each of the privileges asserted and then apply those standards to each category of documents.

## II.

### Attorney-Client Privilege

The attorney-client privilege is the oldest privilege for confidential communications known to the common law. Upjohn Co. v. United States., 449 U.S. 383, 389 (1981). Where the attorney-client privilege applies, "it affords confidential communications between lawyer and client complete protection from disclosure." Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998). It applies to individuals and corporations, and to in-house and outside counsel. See Upjohn, 449 U.S. at 394. Because the attorney-client privilege "impedes the full and free discovery of the truth, it must be narrowly construed and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." In re Grand Jury Subpoena, 341 F.3d 331, 335 (4th Cir. 2003) (internal quotation marks and citations omitted).

The Fourth Circuit applies the "classic test" of the attorney-client privilege:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of a bar or court, or his subordinate and (b) in connection with this communication is acting in his capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purposes of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed (b) and not waived by the client.

Id. at 336. "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability. The proponent must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived." Id. (citation omitted). "Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the privilege." United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982).

**Deliberative Process Privilege**

The deliberative process privilege protects from disclosure certain documents that contain "advisory opinions, recommendations and deliberations" on which governmental decisions and policies are based. In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997) (citation omitted); NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) (The privilege rests on "the policy of protecting the 'decision making processes of government agencies,' [] and focus[es] on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'")(citations omitted). The purpose of the privilege is to protect agency deliberations from public scrutiny, encouraging "the policy of open, frank discussion between subordinate and chief concerning administrative action." Kaiser Aluminum & Chem. Corp. v. United States, 141 Ct. Cl. 38, 48 (1958); see also Sears, Roebuck &

Co., 421 U.S. at 151 ("Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions.").

To invoke the deliberative process privilege, the government must show that the documents are both (1) predecisional and (2) deliberative. See City of Virginia Beach v. Dep't of Commerce, 995 F.2d 1247, 1254 (4th Cir. 1993) (noting that "ultimate questions [are] whether the materials bear on the formulation or exercise of agency policy-oriented judgment [and] whether disclosure would tend to diminish candor within an agency") (citation and internal quotation marks omitted). Predecisional documents are "prepared in order to assist an agency decision maker in arriving at his decision." Id. (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975); see also Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980) (noting that "a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made"). Deliberative materials are documents that reflect "the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes." Id. (citation omitted). Thus, the privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Coastal States Gas Corp., 617 F.2d at 866 ("Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position."). The privilege does not protect factual or investigative material, except as necessary to avoid indirect revelation of the decision-making process. Pac. Gas & Elec. Co. v. United States, 70 Fed.Cl. 128, 133–134 (2006), modified on reconsideration, 71 Fed. Cl. 205 (2006) (quoting Scott Paper Co. v.

United States, 943 F. Supp 489, 496 (E.D. Pa. 1996)). "Thus, factual findings and conclusions, as opposed to opinions and recommendations are not protected." Id. (internal quotations omitted).

Finally, the privilege may be overcome if the moving party demonstrates that its evidentiary need for the documents outweighs the harm that disclosure would cause the non-moving party. Sikorsky Aircraft Corp. v. United States, 106 Fed. Cl. 571, 577 (2012). To determine whether the privilege should be overcome, the court may consider five factors:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

Dairyland Power Co-op. v. United States, 77 Fed. Cl. 330, 338 (2007) (quoting In re Subpoena Served Upon Comptroller of Currency, 967 F.2d 630, 634 (D.C. Cir. 1992).

There are three procedural requirements for assertion of the privilege: 1) the agency head must assert the privilege after personal consideration; 2) the agency head must state with particularity the information subject to the privilege; and 3) the agency must aver precise and certain reasons for preserving the confidentiality of the requested documents. Dairyland Power Co-op., 77 Fed. Cl. at 336–37. Here, the DOL submitted an affidavit from the Deputy Assistant Secretary for Program Operations, Timothy D. Hauser, stating why the documents at issue are protected by the deliberative process privilege. Dkt. No. 120-1. See Kaufman v. City of New York, No. 98 Civ. 2648(MJL)(KNF), 1999 WL 239698, at *3 (S.D.N.Y. Apr. 22, 1999) ("The agency head or his or her authorized designee must invoke the privilege through an affidavit which states, *inter alia*, that he or she has reviewed each of the relevant documents and provides the reason(s) why preserving confidentiality—rather than the agency's interest in the particular action—outweighs the public interest in disclosure."). Deputy Assistant Secretary Hauser listed

the documents by Bates number, and affirmed that the documents contain the internal deliberations of the Employee Benefits Security Administration ("EBSA") prior to the decision to commence legal action, including: the pre-decision intra-agency deliberations of EBSA; recommendations, opinions, and advice on legal or policy matters; and written summaries of factual evidence that reflect a deliberative process. Dkt. No. 120-1, p. 5. Deputy Assistant Secretary Hauser, acting under delegated authority, invoked the deliberative process privilege to "protect and promote candid discussions within the agency." Id. Thus, I find that the procedural requirements for asserting the deliberative process privilege are met.

## Work Product Doctrine

The work-product doctrine is set forth in Federal Rule of Civil Procedure 26(b)(3)(A), which states: "Ordinarily, a party may not discover documents . . . that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Thus, there are three threshold requirements for evidence to be shielded from discovery by the doctrine:

> First, the information sought must be otherwise discoverable. Second, it must have been prepared in anticipation of litigation. Third, the material must have been prepared by or for a party to the lawsuit or by of for that party's representative.

Collins v. Mullins, 170 F.R.D. 132, 134 (W.D. Va. 1996). The party opposing discovery bears the burden of showing that information or material withheld from discovery meets these three criteria and is thus protected by the work-product doctrine. See Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998) (citing Jones, 696 F.2d at 1072); Front Royal Ins. Co. v. Gold Players, Inc., 187 F.R.D. 252, 254 (W.D. Va. 1999); Collins, 170 F.R.D. at 134. If the information sought meets these three criteria, it is discoverable only if the requesting party shows that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial

equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); Adair v. EQT Prod. Co., 294 F.R.D. 1, 3–4 (W.D. Va. 2013). However, even if certain documents are protected by the work product doctrine, the "facts themselves" are not protected. Connecticut Indem. Co. v. Carrier Haulers, Inc., 197 F.R.D. 564, 574 (W.D.N.C. 2000) (quoting Ring v. Commercial Union Ins. Co., 159 F.R.D. 653, 659 (M.D.N.C. 1995)).

## Law Enforcement Privilege

The law enforcement privilege has not been formally recognized or addressed by the Fourth Circuit, but other courts have recognized that certain law enforcement techniques may be subject to a qualified privilege. See United States v. Matish, 193 F. Supp. 3d 585, 600–601 (E.D. Va. 2016); Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1341 (D.C. Cir. 1984) ("There surely is such a thing as a qualified common-law privilege within the meaning of Fed. R. Civ. P. 26(b), for law-enforcement investigatory files.").

> The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

In re Dept. of Investigation of City of New York, 856 F.2d 481, 484 (2d Cir. 1988). The party asserting the privilege bears the burden of showing that the privilege applies to the documents in question. In re The City of New York, 607 F.3d 923, 944 (2010) (citing In re Sealed Case, 856 F.2d 268, 271–72 (D.C. Cir. 1988)). "An investigation, however, need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public." Id. (internal quotations omitted).

The law enforcement privilege is qualified and the court must balance "[t]he public interest

in nondisclosure . . . against the need of a particular litigant for access to the privileged information." Id. (quoting In re Sealed Case, 856 F.2d at 272). There is a strong presumption against lifting the privilege, and to rebut the presumption, the party seeking disclosure must show (1) that its suit is non-frivolous and brought in good faith, (2) that the information sought is not available through other discovery or from other sources, and (3) a compelling need for the information. In re The City of New York, 607 F.3d at 945.

### III.

**1. Case Opening and Conversion Memo and Supporting Documents (Bates Nos. 1334–1338, 1345, 1377–1380, 1467–1494)**

The DOL asserts that these documents are entitled to protection under the deliberative process privilege and work product doctrine. I conclude that the majority of these documents are properly withheld on the basis of deliberative process privilege and work product doctrine because they contain the subjective advice, conclusions, opinions and recommendations of the DOL investigators. However, I find that the DOL must disclose the case opening document dated January 15, 2013 (Bates Nos. 1334 & 1335), and the conversion memorandum (Bates Nos. 1337 & 1338) with certain redactions.[1] To the extent that these documents recite factual findings and investigative material, they are not covered by the deliberative process privilege and work product privilege. See Pac. Gas & Elec. Co., 70 Fed. Cl. at 133–134. With regard to any opinions, recommendations, and deliberations contained in the non-redacted portions of these documents, I find that the deliberative process privilege and work product protection is outweighed by Defendants' substantial need to access facts regarding the DOL's knowledge of the subject ERISA violations. Factual information relating to the timing and extent of the DOL's knowledge of the

---

[1] I will notify the DOL of the specific redactions I find necessary and warranted in a separate, *ex parte* communication, so that it can make the redactions prior to producing the documents.

ERISA violations is highly relevant to the statute of limitations in this case, and the Defendants cannot obtain this information by other means. Each party should have the ability to make arguments and build the record as necessary to support or defend its position; thus, production of these limited materials is proportional to the needs of the case. See Fed. R. Civ. P. 26(b)(1).

    2. **Statute of Limitations Analysis (Bates Nos. 1496–1497)**

The DOL properly asserted the attorney-client and work product privilege over this document because it is a communication from regional counsel to the regional solicitor analyzing legal issues and providing legal advice. There is no assertion that the attorney-client privilege attaching to this document has been waived; thus, these documents are properly withheld.

    3. **Major Case Milestones (Bates No. 1509)**

The DOL properly asserted the deliberative process privilege and work product doctrine over this document, as it reflects the internal agency consultative and deliberative process with regard to the investigation and pursuance of agency cases. I find no information within this document for which Defendants have a compelling need to obtain related to the statute of limitations defense.

    4. **Investigative Plan (Bates Nos. 1498–1501)**

The DOL properly asserted the deliberative process privilege and work product doctrine over this document, as it contains internal agency deliberations and recommendations and was prepared in anticipation of litigation. Furthermore, Defendants do not have a compelling need for this document, which is dated October 22, 2014, more than two years after all parties agree the statute of limitations had begun to run in this case.

    5. **Investigator Generated ESOP Transaction Chart (Bates No. 1831)**

The ESOP Transaction Chart generated by DOL investigator Colleen McKee is not

protected by either the deliberative process privilege or work product doctrine, as claimed by the DOL. This chart is merely a visual representation, using directional arrows, of factual material regarding the ESOP transaction at issue, and factual material is not protected under either doctrine. Thus, I find that the DOL must produce this document.

### 6. Investigator Generated Timeline of ESOP Transaction Events (Bates No. 1832)

Similarly, I find that the Timeline of Events generated by DOL investigator McKee is not protected by either the deliberative process privilege or work product doctrine, as claimed by the DOL. The timeline contains only factual information consisting of a timeline of dates and actions related to underlying ESOP transaction, which are not protected under either doctrine. Thus, I find that the DOL must produce this document.

### 7. Investigator Generated Chart of Persons Involved with Transaction (Bates No. 1253)

The DOL properly asserted the deliberative process privilege and work product protection over the Chart of Persons, as it reflects internal agency investigation and deliberations with respect to the subject ESOP transaction and the overall pursuance of agency cases. Unlike the Timeline of Events and ESOP Transaction Chart, the Chart of Persons reflects internal thought processes, analyses and conclusions of the DOL. Further, I find no information within this document that Defendants have a compelling need to obtain related to their statute of limitations defense.

### 8. Communication Log (Bates No. 2006–2008)

The DOL properly asserted the deliberative process privilege and work product protection over the Communication Log, as it reflects the internal agency investigative and deliberative process with regard to the investigation and pursuance of agency cases. I find no information within this document that Defendants have a compelling need to obtain related to their statute of

limitations defense.

### 9. Investigator Emails: Regarding Case Strategy and Case Status (Bates No. 5177, 5366, 5378, 5379, 5430, 5936, 5937, 6137, 6138, 6310, 6312, 6313)

The DOL asserts that these e-mails are entitled to protection under the attorney-client privilege, the deliberative process privilege and the work product doctrine. I find that the DOL must produce certain e-mails dated July 9 and 16, 2012 (Bates Nos. 5177, 5366, and 5378), with redactions.[2] With regard to any opinions, recommendations, and deliberations contained in these e-mails, the deliberative process privilege and work product doctrine are outweighed by Defendants' substantial need for facts regarding the timing of the DOL's knowledge of the subject ERISA violations. The dates of these emails make them relevant to the extent and timing of the DOL's knowledge of the ERISA violation, information Defendants need to craft and support arguments regarding the statute of limitations. Thus, production of these limited materials is proportional to the needs of the case. See Fed. R. Civ. P. 26(b)(1). Further, I find that the attorney-client privilege does not apply to these e-mails, as the DOL has not shown that the e-mails were confidential communications with an attorney for the purposes of securing legal advice or services.

The remainder of the emails are properly withheld on the basis of the deliberative process privilege and the work product doctrine, and are not outweighed by a compelling need. These e-mails are properly withheld, as they relate to the day-to-day investigation of the case, including ministerial issues such as travel arrangements and scheduling interviews, and investigative techniques.

---

[2] I will notify the DOL of the specific redactions I find necessary and warranted in a separate, *ex parte* communication, so that it can make the redactions prior to producing the documents.

### 10. ESOP Power Point Presentation (Bates Nos. 973–994)

The DOL asserts that the ESOP power point presentation is a draft report created by a testifying expert witness, and therefore, is protected by the work product doctrine. See Fed. R. Civ. P. 26(b)(4). Federal Rule of Civil Procedure 26(a)(2)(B)(ii) mandates the disclosure of all facts or data considered by an expert witness who is retained or employed to provide expert testimony, when the facts or data were considered by the expert in forming opinions the witness will express. In 2010, Rule 26 was amended to "address concerns about expert discovery," which included adding Rule 26(b)(4)(B) protecting drafts of export reports required under Rule 26(a)(2), regardless of the form in which the draft is recorded. See Fed. R. Civ. P. Rule 26 Advisory Committee Notes, Subdivision (b)(4) (2010).[3] The 2010 Advisory Committee notes state:

> Rule 26(b)(4)(C) is added to provide work-product protection for attorney-expert communications regardless of the form of the communications, whether oral, written, electronic, or otherwise. The addition of Rule 26(b)(4)(C) is designed to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery.

Fed. R. Civ. P. Rule 26 Advisory Committee Notes, Subdivision (b)(4) (2010).

I agree that the ESOP power point presentation is a draft export report and is protected from disclosure under Rule 26(b)(4)(B). There is no dispute that the power point presentation was created by a testifying expert in this matter. The report is labeled on each page as "DRAFT: FOR DISCUSSION PURPOSES ONLY." Defendants argue that though this document may be a draft communication between a testifying expert and the DOL, it is not a draft of the expert's final report which would fall within the protection of Rule 26(b)(4)(B). Defendants also assert that to the

---

[3] The Rules also included Rule 26(b)(4)(C), which "protect[s] communications between the party's attorney and any [expert] witness required to provide a report under Rule 26(a)(2)(B)," with three exceptions into which discovery is permitted: "communications [that] (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed."

extent the report contains any facts regarding the DOL's knowledge of the ERISA violations prior to filing suit, it should be produced. Having reviewed the power point presentation, I find that it is the type of draft report protected by Rule 26(b)(4)(B).

In United States v. Veolia Environnement North American Operations, Inc., No. CV 13-MC-03-LPS, 2014 WL 5511398, at *3 (D. Del. Oct. 31, 2014), the court held that draft valuation letters and draft valuation presentations from a testifying expert qualify as draft "reports" within the meaning of Rule 26(b)(4). The court noted that such draft reports, "demonstrating counsel's collaborative interactions with expert consultants" are protected "notwithstanding the form these documents take." Id. at *5. Likewise, in Davita Healthcare Partners, Inc. v. United States, 128 Fed.Cl. 584, 591 (2016), the court stated that "[d]ocuments reflecting [an expert witness's] preliminary analysis are work product whether viewed as a 'preliminary expert opinion' or as a communication from expert to counsel reflecting their joint effort to develop strategy." Here, the power point presentation includes spreadsheets, graphs, and analyses in a presentation to counsel that reflects the expert and counsel's collaborative efforts to analyze data and is properly protected as a draft report under Rule 26(b)(4)(C). I further find no facts or information within the power point presentation that create a compelling need by the Defendants to override the work product protection over this document.

**11. Other Expert Witness Discovery**

Defendants also seek additional information from the DOL's testifying expert witness, Dana Messina. During the hearing, the parties noted that the majority of the documents sought had been or will be produced by the DOL. The remaining documents still at issue involve information provided to Mr. Messina by the DOL for his evaluation of the case. The documents were in .pdf format and were uploaded by the DOL to a "portal" which could be accessed by Mr. Messina. The

DOL agreed to provide a screen shot of the .pdf files with file names describing each of the documents provided to Mr. Messina. The DOL also agreed to determine from its IT personnel the date on which the "portal" was made available to Mr. Messina. If these issues cannot be resolved by the parties, they may reassert them with the court.

## IV.

For the foregoing reasons, Defendants' motion to compel production of non-privileged documents is **GRANTED in part** and **DENIED in part**, as follows:

The DOL shall produce:

1. The case opening document dated January 15, 2013 (Bates Nos. 1334 and 1335) and the conversion memorandum (Bates Nos. 1337 and 1338), with certain redactions.

2. E-mails dated July 9 and 16, 2012 (Bates Nos. 5177, 5366, and 5378), with certain redactions.

3. Investigator Generated ESOP Transaction Chart (Bates No. 1831) and Investigator Generated Timeline of ESOP Transaction Events (Bates No. 1832).

However, I find that the remainder of the documents sought are protected by either the deliberative process privilege, attorney work product doctrine, law enforcement privilege, or attorney-client privilege, as explained in this opinion.

Entered: March 31, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge